```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

JOHN JOHNSON AND ROBERT                         CIVIL ACTION
CHARLES BURDEN, ET AL.


VERSUS                                          NO: 04-3201 c/w
                                                     05-6627


BIG LOTS STORES, INC.                           SECTION: R(1)
```

### ORDER AND REASONS

Before the Court is defendant Big Lots' motion *in limine* concerning the admissibility of evidence gathered from Big Lots assistant store managers who did not opt into this collective action as plaintiffs (non-opt-in ASMs). Big Lots seeks an order that such evidence is relevant. For the following reasons, the Court GRANTS Big Lots' motion.

The Court also held a status conference in this matter on February 19, 2008 at which it addressed numerous pretrial and trial preparation issues. Accordingly, the Court revises the trial plan order that it issued on November 6, 2007, reducing the

number of non-expert witnesses that each party may present at trial from 45 to 20 and adjusting other pretrial deadlines.

I.   BACKGROUND[1]

The plaintiffs in this case are current and former assistant store managers (ASMs) of defendant Big Lots, Inc., a nationwide retailer. Plaintiffs have brought a collective action for unpaid overtime wages under § 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). No one disputes that the plaintiffs and ASMs generally work in excess of 40 hours per week. Big Lots does not pay overtime wages to ASMs, who are salaried employees, because it classifies ASMs as executive employees, who are exempt from the FLSA's overtime pay provisions. *See* 29 U.S.C. § 213(a)(1). Plaintiffs assert that Big Lots "has, in the past, and currently continues to, misclassify the Assistant Managers as exempt from the overtime requirements of the [FLSA]."[2] Plaintiffs allege that "[a]ll Big Lots stores are operated under managerial control exercised by its corporate headquarters. There are no

---

[1] A more extensive overview of the factual and procedural background of this case may be found in the Court's August 21, 2007 order denying Big Lots' motion for decertification. *See* R. Doc. 113.

[2] Pls.' Cmplt. at ¶ 11, R. Doc. 1 at 3.

deviations in job duties from store to store."[3] They further contend that "[t]he job of Assistant Manager is not exempt from the FLSA" and that Big Lots has "carried out and continues to carry out its corporate policy and practice of misclassifying Assistant Managers as exempt from the FLSA."[4]

On August 21, 2007, the Court denied Big Lots motion to decertify this case as a collective action. At that time, approximately 1,200 out of roughly 5,000 eligible ASMs had joined or opted into this case as plaintiffs under the procedure in 29 U.S.C. § 216(b). Now, 963 opt-in ASMs remain. Based on plaintiffs' submission of deposition testimony of opt-in ASMs and statistically significant survey data that showed that a very large proportion of opt-in ASMs spent a majority of their workdays performing non-exempt tasks, the Court found that the opt-in ASMs were similarly situated and that their claims against Big Lots were therefore appropriate for collective treatment.

On November 6, 2007, the Court entered a trial plan order, setting deadlines for the submission of expert reports and ordering the parties to designate the non-expert witnesses that

---

[3] Pls.' Cmplt. at ¶ 8, R. Doc. 1 at 3.

[4] Pls.' Cmplt. at ¶¶ 17, 18, R. Doc. 1 at 5.

3

they planned to present at trial.[5] The Court limited each party to 45 non-expert witnesses. Plaintiffs identified 45 witnesses, 42 of whom are opt-in ASMs. Instead of identifying no more than 45 witnesses as ordered by the Court, Big Lots identified 36 non-expert witnesses and attached a list of 26 additional names, asserting that it might designate some of these individuals as witnesses after taking depositions.[6]

Thirty-one of the 36 witnesses identified by Big Lots were non-opt-in ASMs. This has sparked an evidentiary controversy between the parties as to the relevance of testimony from non-opt-in ASMs and highlighted an underlying disagreement over plaintiffs' theory of Big Lots' liability in this case. In December 2007, plaintiffs filed a motion to amend the trial plan order and to strike Big Lots' witness list on the grounds that it exceeded the limit set by the Court and that testimony of non-opt-in ASMs is irrelevant to the issue of whether Big Lots has misclassified the opt-in plaintiffs as executive employees. Plaintiffs later withdrew their motion. Now, Big Lots has filed a motion *in limine*,[7] seeking clarification that evidence collected

---

[5] *See* Nov. 6, 2007 Trial Plan Order, R. Doc. 128 at 1-2.

[6] *See* Def.'s Witness List, R. Doc. 129 at 2-5.

[7] Big Lots filed its motion *in limine* before the magistrate judge. Motions directed to the admissibility of evidence are

from non-opt-in ASMs is relevant in order to prepare for the nonjury trial in this matter that is set to commence on May 5, 2008.

**II. RELEVANCE OF EVIDENCE GATHERED FROM NON-OPT-IN ASMs**

Under Federal Rule of Evidence 401, evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, unless it falls under some other exception. Fed. R. Ev. 402. Relevance is a relational concept. Whether evidence is relevant depends on the issues raised by the parties and other evidence introduced, as well as the substantive legal standards that apply to the case. When there is a dispute over whether a defendant-employer maintains a generally applicable policy or employment practice, courts have found that evidence of the defendant-employer's relationship with employees who are not plaintiffs in the suit is nonetheless relevant because it goes to establishing the probability of the policy or practice in dispute. *See, e.g., Goldsmith v. Bagby Elevator Co., Inc.*, ___ F.3d ___, ___, 2008 WL 150585, at *21 (11th Cir. 2008)

---

properly directed to the district judge. Accordingly, the Court ordered that the motion be heard before the undersigned.

(upholding as relevant to plaintiff's individual claim of racial discrimination evidence of racial slurs directed at other employees to establish differential employee treatment and to rebut defendant's supervisors' claims that they were unaware of any instances of a racially hostile work environment); *Lindsey v. Prive Corp.*, 161 F.3d 886, 894 (5th Cir. 1998) (finding that testimony of plaintiff's co-worker about "climate of age bias" at plaintiff's place of employment was relevant to plaintiff's age discrimination claim because plaintiff sought to show an ongoing pattern and practice of age discrimination but upholding exclusion of evidence as cumulative); *Arnold v. Rayonier, Inc.*, 181 F.R.D. 549, 554-55 (S.D. Ga. 1998) (allowing defendant-employer to introduce statistical evidence showing that it did not have a pattern of terminating older employees over plaintiff's objection that such evidence was irrelevant because it could not show that plaintiff was not the subject of discrimination).

A hotly contested issue in this case is whether the job functions and work experiences of the opt-in ASMs are a product of a uniform corporate policy applied on a nationwide basis. Plaintiffs repeatedly allege in their complaint that Big Lots maintains a *de facto* corporate policy and practice of misclassifying the job position of assistant store manager as an

exempt executive employee under the FLSA on a companywide basis.[8] Plaintiffs contend that Big Lots is liable to them for unpaid overtime wages because Big Lots engages in a uniform corporate practice of misclassifying the ASM position as exempt. The work experiences of other individuals who held the same job position of assistant store managers as plaintiffs and were subject to the same company policies and uniform job descriptions as plaintiffs are relevant to the determination of whether Big Lots engages in a corporate practice of misclassification in violation of the FLSA.

 Plaintiffs are mistaken that this Court, in denying Big Lots' motion to decertify, limited the factual inquiry into Big Lots' liability under the FLSA to evidence only of the opt-in plaintiffs' work experiences. It is the nature of plaintiffs' claims and their theory of Big Lots' alleged wrongdoing that dictates what evidence is relevant. As explained, *supra*, they collectively assert that Big Lots misclassifies the ASM position as exempt as a matter of corporate policy and practice. Thus, evidence gathered from other ASMs, whether they have opted into this suit as plaintiffs or not, is relevant to this issue raised by plaintiffs.

---

[8] *See* Pls.' Cmplt. at ¶¶ 8, 11, 15, 17, 18, R. Doc. 1.

Plaintiffs also argue that they will suffer prejudice if Big Lots is allowed to rely on non-opt-in ASM evidence because their expert report does not include an analysis of evidence gathered from non-opt-in ASMs, whereas Big Lots has been able to analyze data collected from both opt-in and non-opt-in ASMs because it filed its report after plaintiffs submitted theirs. Plaintiffs, however, are not barred from critiquing Big Lots' expert evidence or identifying flaws in its methodology or reliability. Furthermore, plaintiffs may seek leave to file supplemental expert reports, if need be, to address the issue.

**III. REVISION OF SCHEDULING ORDER**

    **A.   Number of Non-Expert Witnesses for Trial**

The Court has also reexamined the issue of what number of trial witnesses is necessary to resolve this matter. It is well established that courts may rely on representative testimony along with other evidence in resolving misclassification and overtime pay claims under the FLSA. *See, e.g., Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3d Cir. 1991) (explaining that it is "not necessary for every single affected employee to testify in order to prove violations or to recoup back wages. The testimony and evidence of representative employees may establish *prima facie* proof of a *pattern and practice* of FLSA violations")

(emphasis added); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (holding that testimony from only six witnesses drawn from only six of defendant's restaurants with stipulation that twenty others would similarly testify was sufficient to support award of back overtime wages for 246 employees at 44 restaurants); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982) (concluding that representative testimony of 23 employees was sufficient to support district court's finding that employer violated overtime provision of FLSA and award of backpay to 207 employees). Proof of whether or not Big Lots maintains a corporate policy and practice of misclassifying the ASM job position can be submitted through expert testimony based on statistical analyses of information derived from statistically significant numbers of ASMs about their job functions and duties. *See, e.g., Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 319 (7th Cir. 2003) (noting relevance of statistical evidence to prove claims of age discrimination under Age Discrimination in Employment Act); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1228 (11th Cir. 2001) (explaining that class action and collective action plaintiffs proceeding under a pattern or practice theory "often introduce statistics to bolster their claims"); *E.E.O.C. v. McDonnell Douglas Corp.*, 17 F. Supp. 2d

1048, 1051 (E.D. Mo. 1998) (explaining that plaintiffs alleging a pattern or practice of unlawful discrimination in ADEA context must typically present "reliable statistical evidence, buttressed by evidence of general policies and specific instances of discrimination" to establish unlawful practice). Both parties apparently intend to submit such testimony. It is not necessary for the Court to hear testimony from all of the underlying ASMs. The Court therefore revises its earlier order to reduce the number of non-expert witnesses that each party may present at trial to 20. The testimony of 40 witnesses, combined with the parties' expert analyses, will allow the Court to reliably determine whether Big Lots maintains a corporate policy of misclassification in violation of the FLSA. Any larger number would simply be cumulative.

To facilitate the identification of these witnesses, the Court ORDERS each side to redesignate non-expert witnesses by March 3, 2008. At this time, no party may designate more than 40 witnesses, and the 20 trial witnesses per side must be selected from the respective pool of 40 witnesses that each party identifies on March 3. Depositions are limited to persons named in the lists submitted on March 3, 2008.

    **B.**   ***Daubert* Motions**

The Court also resets the deadline for considering motions

*in limine* concerning expert evidence. Under the Court's earlier scheduling order, the parties were to submit motions on the admissibility of expert evidence for hearing no later than April 2, 2008. In light of deposition schedules, the Court extends that hearing deadline by two weeks. Any motions challenging the admissibility of expert evidence shall be set for hearing on or before April 16, 2008. The Court will decide any *Daubert* motions on written submissions, which may include affidavits, expert reports, depositions of experts, and other documents. The Court will notify the parties if it will hear oral argument on these motions.

### C.   Stipulations about Plaintiffs' Workweeks and Pay

The parties have agreed to stipulate to the amount of time that each of the opt-in plaintiffs worked while employed as assistant store managers for Big Lots (plaintiffs' "workweeks") and the amounts that they were paid. The parties are to submit stipulations as to plaintiffs' workweeks and wages at the pretrial conference set for April 22, 2008 at 4:00 p.m.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Big Lots' motion *in limine*. The Court FURTHER ORDERS each party to submit a revised list of no more than 40 potential non-expert witnesses,

no more than 20 of whom may testify at trial. Further, no person may be deposed who is not on the March 3, 2008 list. The Court further RESETS the hearing deadline for *Daubert* motions for April 16, 2008, and ORDERS the parties to submit stipulations about plaintiffs' work-time at the pretrial conference on April 22, 2008.

New Orleans, Louisiana, this 20th day of February, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE