UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN JOHNSON, ET. AL.                    CIVIL ACTION

VERSUS                                   NO: 04-3201 c/w
                                              05-6627

BIG LOTS STORES, INC.                    SECTION: R(1)


## ORDER AND REASONS

The following matters are before the Court: (1) defendant Big Lots Stores, Inc.'s motion *in limine* to limit the testimony of plaintiffs' expert witnesses (R. Doc. 356); (2) plaintiffs' omnibus motion *in limine* (R. Doc. 359); (3) plaintiffs' objections to Big Lots trial exhibits (R. Doc. 344); (4) Big Lots' objections to plaintiffs' trial exhibits (R. Doc. 347); (5) plaintiffs' objection to the magistrate judge's order (R. Doc. 337); and (6) plaintiffs' motion for partial summary judgment (R. Doc. 203). For the following the reasons the Court (1) GRANTS in part and DENIES in part Big Lots' motion *in limine* concerning Rausser and Cutler; (2) GRANTS in part and DENIES in part

plaintiffs' omnibus motion *in limine*; (3) SUSTAINS in part and OVERRULES in part plaintiffs' objections to Big Lots' trial exhibits; (4) SUSTAINS in part and OVERRULES in part Big Lots' objections to trial exhibits; (5) AFFIRMS the magistrate judge's ruling; and (6) DENIES plaintiffs' motion for partial summary judgment.

I.   **BIG LOTS' MOTION *IN LIMINE* TO LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT WITNESSES**

Big Lots moves to limit the trial testimony of plaintiffs' expert economist and statistician, Professor Gordon Rausser, and their Fair Labor Standards Act (FLSA) compliance expert, William Cutler, to work that they completed before their depositions. Big Lots has filed its motion on the heels of the Court's ruling at the pretrial conference in this matter that Big Lots' expert economist, Jonathan Walker, Ph. D., "will not be permitted to testify about information that either was not addressed in his expert report or discussed during his deposition" and that Dr. Walker would specifically be precluded from "comment[ing] on depositions that were not discussed in his report or discussed during his deposition." (R. Doc. 350 at 3.) Big Lots essentially seeks an order barring Rausser from testifying about any of the topics that he covered in his April 10, 2008 declaration prepared

2

in response to Big Lots' *Daubert* motion to exclude his opinion and testimony altogether and Walker's criticisms of Rausser's methods. In its *Daubert* motion, Big Lots argued that Cutler's opinion was unreliable because it was largely based on Rausser's work, which it contended was unreliable. The Court is not aware of any supplemental reports or declarations filed by Cutler similar to those prepared by Rausser.

### A.   Legal Standard

At issue here is whether plaintiffs disclosed Rausser's declaration in a timely manner.[1] Federal Rule of Civil Procedure 26(a)(2) generally governs the disclosure of expert testimony. Under Rule 26(a)(2)(C)(ii), a party must disclose evidence that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure."

### B.   Timeline of Expert Witness Disclosures

Given the nature of Big Lots' argument — that Rausser's declaration was untimely and did not afford Big Lots sufficient time to respond to or question him about it — the timeline of the

---

[1] There is no dispute over whether the parties disclosed their initial expert reports in a timely manner. Big Lots has not raised any objections to the timeliness of Rausser's addendum, and the Court has already ruled that Walker's addendum will not be excluded as untimely. (*See* R. Doc. 366 at 31-32.)

filing of expert reports and depositions is critically important. Plaintiffs submitted the expert reports of both Rausser and Cutler on December 21, 2007 in accordance with the Court's scheduling order. On January 21, 2008, Rausser issued an addendum to his initial report that covers additional data from the survey that he conducted of opt-in plaintiffs in this case. On January 25, 2008, Big Lots submitted the report of its expert, Walker, also in accordance with the scheduling order. In his report, Walker criticized Rausser's methodology and his interpretation of the survey data, and he independently analyzed the survey data that Rausser had gathered. Walker's January 25 report did not address Rausser's addendum that plaintiffs filed on January 21.

On February 29, 2008, Big Lots deposed Rausser. Rausser stated during his deposition that he had not examined Walker's report in-depth and that he and his staff were continuing to review Walker's report along with unspecified declarations that Big Lots had obtained from opt-in plaintiffs. (*See* Rausser Dep. at 188.) Rausser stated that he planned to prepare a report rebutting Walker's criticisms after Walker gave his deposition. (Rausser Dep. at 200.) Big Lots' counsel also asked Rausser about his familiarity with the Federal Judicial Center's *Reference Manual on Scientific Evidence* and the *Guidelines for Statistical Surveys* issued by the former Office of Statistical Standards, two

sources on which Walker relied to criticize Rausser's work in his initial report, and whether the guidance that those publications provide on response rates that are required for a reliable survey is authoritative. (*See* Rausser Dep. at 200-02). Rausser explained that he was familiar with those texts but that he considered some of the statements in the *Guidelines for Statistical Surveys* to be false. (*See id.* at 201.) He did not offer a definitive opinion on the *Reference Manual* other than that he considered it a source. (*See id.* at 202.) Big Lots' counsel also asked Rausser about his computations of how many overtime hours the opt-in plaintiffs had worked and what he planned to do to calculate plaintiffs' alleged damages. Rausser explained that he calculated the amount of overtime worked based on averages reported by survey respondents and that to calculate damages, he planned to compare survey responses with statements made in individual depositions. (*See id.* at 203-05.) Rausser also explained that he would then compare those statements and responses with a "benchmark source" provided by Big Lots, such as a time log of the hours that the opt-in plaintiffs worked or their work schedules. (*See id.* at 203-10.)

On March 14, 2008, Big Lots deposed Cutler. Cutler stated that he had read depositions of only two plaintiffs, John Johnson and Robert Charles Burden, before his deposition. (*See* Cutler Dep. at 223-24.) Cutler had also relied on the survey data

compiled by Rausser to prepare his report. (*See id.* at 227.)

The parties had initially scheduled Walker's deposition for March 20, 2008. But they had to reschedule it for April 4, 2008 because Big Lots' attorney was sick and could not travel. (*See* R. Doc. 250-2.) On March 31, 2008, in between the date that he was initially supposed to be deposed and his eventual deposition, Walker submitted an addendum to his report that he had submitted earlier on January 25, 2008. In that addendum, Walker addressed Rausser's revised analysis contained in his January 21 addendum.

Big Lots filed its *Daubert* motion to exclude the opinions of Rausser and Cutler on April 2, 2008; with the Court's permission, plaintiffs filed their *Daubert* motion concerning Walker on April 16, 2008 because of the delay in taking his deposition. The Court denied the parties respective motions on April 29, 2008.[2] (*See* R. Doc. 366.) In their response to Big Lots' *Daubert* motion filed on April 11 and in their own *Dabuert* motion concerning Walker, the plaintiffs submitted a declaration prepared by Rausser on April 10. In his declaration, Rausser criticized Walker's opinion and report and addressed the criticisms that Walker raised about his

---

[2] The Court granted plaintiffs motion to exclude the opinion and report of Big Lots' FLSA compliance expert, Dan Bremer, in its April 29, 2008 order as well. That aspect of the Court's order has no bearing on the issues raised in Big Lots' motion to limit the scope of Rausser's and Cutler's testimony.

work. To rebut Big Lots' criticisms that his methods were unreliable and to respond to Walker's criticisms that his survey did not satisfy the criteria for reliability outlined in the *Reference Manual*, Rausser discussed several academic articles employing survey techniques similar to the ones that he used. Although Rausser's declaration related to his survey and report, he cited additional sources to which he had not referred earlier and conducted different analyses of the survey responses from those contained in his initial report to verify their reliability.

### C.   Analysis

The Court does not find that plaintiffs disclosed Rausser's declaration in an untimely manner. Rausser's declaration is essentially a rebuttal to Walker's criticisms. As such, it is subject to the 30-day disclosure deadline set forth in Rule 26(a)(2)(C)(ii). Plaintiffs filed Rausser's declaration on April 11, 2008, only 11 days after Big Lots disclosed Walker's addendum to his expert report on March 31, 2008 and seven days after plaintiffs deposed Walker on April 4, 2008. Therefore, plaintiffs disclosed Rausser's declaration well within the 30-day period established in Rule 26(a)(2)(C)(ii).

Big Lots' argument that any response of Rausser's to Walker's report need to be disclosed by February 24, 2008 — 30

7

days after Walker filed his original report — is unavailing. Big
Lots filed Walker's addendum on March 31, 2008, more than two
months after plaintiffs disclosed Rausser's addendum on January
21, 2008 and more than a month after Big Lots deposed Rausser on
February 29, 2008. As noted, *supra*, the Court has already ruled
that Walker's addendum will not be excluded on timeliness
grounds. In his declaration, Rausser responds directly to
criticisms that Walker makes in his addendum. Plaintiffs filed
Rausser's declaration well within 30 days of Walker's addendum
and in far shorter order than Big Lots disclosed Walker's
addendum. Plaintiffs also disclosed Rausser's declaration before
the scheduling order deadlines imposed by the Court. Had Walker
never filed an addendum or filed it earlier, Big Lots might have
had a better argument to make in favor of excluding any testimony
of Rausser's derived from his declaration. But Big Lots' decision
to file Walker's addendum as late as it did and the rescheduling
of Walker's deposition to the first week of April make Rausser's
declaration timely. Further, Big Lots is not surprised by the
addendum, and it filed a reply brief on their *Daubert* motion to
address Rausser's declaration. (*See* R. Doc. 377.) Big Lots did
not object to Rausser's declaration at that time, and it has had
plenty of time to formulate questions for cross-examination.
Therefore, Rausser will be permitted to testify about the topics

covered in his declaration. But he will not be permitted to testify about any information that was not contained in his initial report, addendum, declaration, or discussed at his deposition.

With respect to Cutler, the Court is not aware of any addenda or supplemental reports prepared by Cutler, and plaintiffs have not listed any such materials as exhibits. Accordingly, Cutler's testimony will be restricted to the information contained in his report and the documents that he relied upon to prepare his report as well as any information discussed at his deposition. He will not be permitted to testify about any other information.

## II.   PLAINTIFFS' OMNIBUS MOTION *IN LIMINE*

Plaintiffs have filed an omnibus motion *in limine* concerning ten different issues. The Court addresses each in turn.

### A.   Burden of Proof

First, they seek a ruling that precludes Big Lots from introducing evidence or making arguments that improperly shift its burden of proving that it has properly classified the ASM job position as an executive employee exempt from the FLSA's overtime wage provision. Plaintiffs do not point to any specific evidence that they seek to exclude. Instead, they make an abstract

argument about the parties' legal burdens in this case. Thus, plaintiffs have not presented the Court with an evidentiary issue that can be addressed in an *in limine* motion. The Court is well aware of the burdens that the parties bear in this case. Moreover, Big Lots acknowledges that it has the burden of demonstrating that it properly classified ASMs as exempt employees. Accordingly, the Court DENIES plaintiffs' first motion *in limine* on the issue of burden of proof.

**B.   Relevance of Evidence about Non-Opt-In ASMs**

Second, plaintiffs move to exclude evidence about the job experiences of non-opt-in ASMs, *i.e.*, Big Lots assistant store managers who were eligible to join in this collective action as plaintiffs but did not. Plaintiffs argue that evidence about the experiences of non-opt-in ASMs is not relevant to this case. The Court has already addressed this issue and has explained that it is the nature of *plaintiffs' claim* that Big Lots' has maintained a corporate policy and practice of misclassification that makes the experiences of non-opt-in ASMs, who are subject to the same corporate policies and procedures as the opt-in plaintiffs, relevant. (*See* R. Doc. 220.)

In their flurry of pretrial motions, plaintiffs have consistently misapplied the Supreme Court's recent ruling in *Sprint/United Management Co. v. Mendelsohn*, ___ U.S. ___, 128 S.

10

Ct. 1140 (2008), to this case. In *Sprint*, an individual plaintiff brought a complaint of age discrimination against her former employer under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. She sought to introduce "me too" evidence of age discrimination from nonparty witness-employees who worked in different parts of the company from the plaintiff and were not supervised by the same individuals who took adverse employment action against the plaintiff. *Id.* at 1143. The trial court excluded the "me too" evidence that came from employees who were not similarly situated to the plaintiff, that is, employees who were not supervised by a particular supervisor and were affected by adverse employment decisions at different times from the plaintiff. *Id.* at 1144. The Tenth Circuit interpreted the trial court as having applied a *per se* rule in its *in limine* ruling and reversed and remanded the case for a new trial after concluding that the testimony of the nonparty witnesses was relevant. *See id.* Although the parties argued over whether the Tenth Circuit correctly held that the evidence of the nonparty witnesses was relevant, the Supreme Court focused its analysis on whether the Tenth Circuit should have engaged in a relevance analysis at all. The Supreme Court explained that, because the basis for the trial court's ruling was ambiguous, the court of appeals should have remanded the issue to the district court to clarify its ruling.

*Id.* at 1146. The Supreme Court did not articulate a substantive relevance standard to be applied to "me too" evidence in employment discrimination cases. Instead, it emphasized, in reversing the Tenth Circuit's ruling directly on the question of the relevance of the "me too" evidence, that "[t]he question of whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and *theory of the case*." *Id.* at 1147.

As noted, *supra*, the Court has already addressed the question of whether the experiences of non-opt-in ASMs are relevant in the context of the parties' discovery dispute over whether Big Lots would be allowed to depose non-opt-in ASMs. As the Court explained earlier, it is the plaintiffs' theory of the case that Big Lots has maintained a corporate practice of misclassification that makes the experiences of non-opt-in ASMs relevant. Plaintiffs contend that they are all subject to a uniform job description and the same companywide policies that strip them of genuine management duties and executive authority. The opt-in plaintiffs do not contend that the corporate policies to which they are subject are different from the corporate policies that apply to all ASMs. To show that it does not

12

maintain a corporate policy of misclassification, Big Lots may certainly introduce evidence about non-opt-in ASMs who, according to plaintiffs' theory of the case, are subject to the same corporate policies and practices.

Plaintiffs reliance on the Fifth Circuit's decision in *Goff v. Continental Oil Co*, 678 F.2d 593 (5th Cir. 1982), and *Wyvill v. United Companies Life Insurance Co.*, 212 F.3d 296 (5th Cir. 2000), is also misplaced. *Goff* involved an individualized claim of employment discrimination on the basis of race as opposed to a classwide claim. *Goff*, 678 F.2d at 596. The Fifth Circuit affirmed the trial court's ruling that the testimony of other employees who did not work with the plaintiff and did not have knowledge of the plaintiffs' experiences with the defendant-company was irrelevant to the plaintiffs' individualized claim. *Id.* at 597. In *Wyvill*, the plaintiffs attempted to prove that their former employer maintained a pattern and practice of age discrimination by introducing anecdotal testimony from other employees who worked under different supervisors, in different parts of the company, and were fired at different times. *Wyvill*, 212 F.2d at 302. The court explained that "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Id.* at 302. Evidence about

13

those dissimilar employees was not relevant to whether the individual plaintiffs suffered age discrimination. *Id.* at 303. It is the *plaintiffs*' theory of the case that affects whether particular evidence is relevant. Here, plaintiffs have not alleged merely that they were individually misclassified but rather that they are subject to a corporate policy of misclassification. Thus, the job experiences of non-opt-in ASMs who are subject to the same corporate policies are relevant to Big Lots' defense that it has properly classified the ASM job position as an exempt executive employee. Accordingly, plaintiffs' *in limine* motion to exclude evidence relating to non-opt-in ASMs as irrelevant is DENIED.

   **C.   Arguments or Evidence that Big Lots' Non-Opt-In ASM Witnesses Constitute a Statistically Significant Sample of ASMs as a Whole**

   Third, plaintiffs move to prevent Big Lots from arguing that the testimony of its non-opt-in witnesses is statistically significant for purposes of drawing any inferences about the ASM population as a whole or from introducing any belated evidence in the way of surveys or other representative proof. Once again, plaintiffs have failed to point to any piece of evidence that they seek to exclude. An argument about whether the number of non-opt-in ASMs that Big Lots plans to present is statistically significant is not evidence that goes to whether a fact is true

14

or not. With respect to any belated evidence, there is no indication that Big Lots plans to present surprise evidence at trial. Moreover, the parties are bound by the joint pretrial order. Accordingly, plaintiffs third motion in limine is DENIED at this time.

    **D.   Testimony of Brad Waite**

Fourth, plaintiffs move to exclude any testimony from Brad Waite that substitutes or contradicts the testimony of William Coney and Peter Schnorf, Big Lots' corporate representatives designated under Federal Rule of Civil Procedure 30(b)(6). The Court has already addressed the admissibility of testimony by Brad Waite, one of Big Lots' Executive Vice Presidents, in an earlier order. (*See* R. Doc. 382.) As the Court explained in that order, Waite may contradict the testimony of Big Lots' Rule 30(b)(6) witnesses, but Big Lots is still bound by their testimony, and plaintiffs may use the designees' earlier testimony to impeach Waite. Accordingly, plaintiffs' fourth motion *in limine* is DENIED.

    **E.   Evidence of Big Lots' Financial Condition, Net Worth, and Ability to Pay Damages**

Fifth, plaintiffs, without any argument or reference to specific piece of evidence, move to exclude evidence of Big Lots' financial condition. Big Lots does not object to plaintiffs'

15

motion except to the extent that Big Lots seeks to introduce finance-related evidence to demonstrate the diversity of employment settings in individual stores. Because of Big Lots' limited objection, the Court GRANTS plaintiffs' motion but only with respect to financial evidence related to the issue whether Big Lots has the ability to pay damages in this case.

   **F.  Opinions and Conclusions Expressed by Individuals Who Have Not Been Qualified and Designated as Expert Witnesses**

   Sixth, plaintiffs seek to prevent any witness who has not been qualified and designated as an expert from expressing any opinions or conclusions. They so move without reference to any particular witness or making any argument at all for that matter. Federal Rule of Evidence 701 expressly permits lay witnesses to offer their opinions under certain conditions. It provides:

>   If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Ev. 701. Inexplicably, plaintiffs do not address Rule 701. Nor have plaintiffs moored their motion to any particular witness or line of testimony. If in reality putative lay testimony is based on scientific, technical, or specialized

16

knowledge, the rule makes clear that such testimony is subject to the standards of Rule 702 and therefore may be excluded if the witness has not been qualified as an expert in the relevant field and complied with the discovery requirements applicable to expert witnesses. *See id.*, advisory committee's note (2000). But without a concrete dispute over the scope of a witness's testimony, the Court has no basis to rule on plaintiffs' motion. Accordingly, plaintiffs' motion is DENIED.

**G.  Any Reference to a Witness's Criminal History**

Seventh, plaintiffs move in the abstract, again without argument or reference to any specific witness, to exclude any reference to a witness's criminal history "without first satisfying the necessary legal test or standard for such [reference] to be admissible." Plaintiffs have styled this argument as a "motion," but it is not so much of a motion as it is a request for a statement that the Federal Rules of Evidence govern the conditions under which a witness's criminal history may be raised. Big Lots does not directly oppose plaintiffs motion and points out that Federal Rule of Evidence 609 — which plaintiffs do not cite — establishes the rule for attacking a witness's credibility with evidence of an earlier conviction. It is not clear whether any witness's criminal history is at issue in this case. The Court intends to apply Rule 609 to the

17

proffered admission of such evidence and cautions Big Lots to lay the appropriate foundation *before* attempting to impeach a witness with evidence of conviction of a crime.

### H.   Evidence of Opt-In Plaintiffs' Post-Employment Applications

In their eighth motion *in limine*, plaintiffs seek to exclude evidence related to opt-in plaintiffs' applications for employment with other employers after they stopped working for Big Lots. Big Lots seeks to introduce the job applications and/or personal resumes of four opt-in plaintiffs who characterized their job duties as Big Lots ASMs as managerial in nature when they applied for jobs with other employers after they stopped working for Big Lots. (*See* Big Lots' Exs. 1218-22.) These exhibits include (1) Armondo Garcia's job application for a position with Heritage Bank of Florida (Ex. 1218); (2) John Kacmarynski's two applications and accompanying resumes for positions as a correctional officer with the State of Virginia (Exs. 1219, 1222); (3) Jeff Hull's job application and accompanying resume for a position with Procter & Gamble (Ex. 1220); and (4) Cindy Bogert's application for a position with Advance America Cash Advance Center (Ex. 1221). Big Lots asserts that it obtained these documents pursuant to subpoenas *duces tecum* sent to these "post-Big Lots employers" before the close of

18

discovery and that Big Lots notified plaintiffs' of its requests. The discovery cutoff date in this case was March 30, 2008. (*See* R. Doc. 128 at 2.) Judging by the dates of the post-Big Lots employers' letters, these responses trickled in over the month of April, after the close of discovery. Without citing any authority, Big Lots argues that because it issued the subpoenas and sent copies of the subpoenas to plaintiffs before the close of discovery, it does not matter if some of the responses of other employers were not provided until after the close of discovery. It is undisputed, however, that the actual job applications and resumes were not produced until after the close of discovery. Accordingly, these documents were not produced in a timely manner, and the Court GRANTS plaintiffs' motion to exclude them.

## I.    Earlier Determinations or Findings about Big Lots' Classification of Employees

Plaintiffs' ninth motion *in limine* is a blanket motion to exclude earlier findings of other courts or government agencies with respect to Big Lots' classification of employees who are not opt-in plaintiffs. Plaintiffs argue that such determinations are irrelevant, prejudicial, and inadmissible hearsay. Plaintiffs have not pointed to any particular decision that they seek to exclude, but Big Lots has identified the case of *Deborah Hunt v.*

19

*Big Lots Stores, Inc.*, Case No. 3:06CV-2044 (N.D. Ohio 2007), in its response. In *Hunt*, a jury found that Big Lots had not misclassified a furniture department manager as an exempt executive employee. The *Hunt* decision is not relevant to the issue of whether ASMs are properly classified that is central in this case. *Hunt* dealt with an entirely different category of employees. In addition, *Hunt* does not appear to be listed among Big Lots' several hundred exhibits, and in its response, Big Lots does not point to the decision as part of its exhibits. To the extent that *Hunt* is relevant on the issue of whether Big Lots wilfully misclassified ASMs, it is of little to no value. Federal Rule of Evidence 403 provides that evidence, although relevant, may be excluded by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Big Lots can rely on witness testimony to demonstrate its awareness of its obligations under the FLSA and administrative regulations and the care that it took to comply with those standards. The significance of *Hunt* is not hotly contested, and the Court finds that its introduction will be needlessly cumulative and that Big Lots may address the care that it took to comply with the FLSA through other means. Accordingly, the Court GRANTS plaintiffs' motion to the extent that it seeks to exclude discussion of the *Hunt* decision.

20

### J.   Character Evidence

Finally, plaintiffs move to preclude evidence of opt-in plaintiffs' conduct that does not bear directly on their job experiences. Such evidence, plaintiffs contend, amounts to inadmissible character evidence. Of course the Rules of Evidence concerning character evidence apply in this case. But plaintiffs do not point to anything specific, leaving the Court with no basis to rule. Accordingly, plaintiffs' vacuous motion is DENIED at this time.

### III. PLAINTIFFS' OBJECTIONS TO BIG LOTS' EXHIBITS

Plaintiffs have also filed an omnibus motion objecting to hundreds of Big Lots' proposed trial exhibits. Consistent with the parties's treatment of plaintiffs' objections, the Court has analyzed plaintiffs' objections according to general categories.

### A.   Documents Signed and/or Prepared by Opt-In Plaintiffs and Non-Opt-In ASMs[3]

Many of the exhibits that Big Lots seeks to admit consist of documents that were signed and/or prepared by both opt-in and non-opt-in ASMs, some of whom were deposed and some who were not. These exhibits include (1) "Store Operations Performance

---

[3] Plaintiffs identify the trial exhibits in these categories that it objects to in exhibits A-1 - A-3 to their brief on their objections.

Appraisal" forms, which are self-evaluative job performance
appraisals that ASMs and their supervising store managers
completed and signed; (2) federal employment eligibility
verification forms or "I-9" forms confirming the citizenship
status of associate employees; (3) "Action Request Forms," which
include requests that someone be hired or promoted, for example;
(4) "Associate Handbook Acknowledgement Forms," which bear the
signature of an ASM and that of an associate employee confirming
receipt of a handbook providing information about Big Lots; (5)
"Disciplinary Counseling Forms," which are forms that detail
instances in which Big Lots management had to admonish associate
employees for breaking store policies such as attendance, failing
to keep an accurate cash register account, or conflicts with
customers; (6) "Progressive Counseling Forms," which include more
"constructive" criticism and evaluation about associates' job
performance than is contained in the disciplinary forms; (7)
letters confirming offers of employment, which are addressed to,
but not signed by, ASMs. Plaintiffs object that these exhibits
are inadmissible because they (1) violate the Court's scheduling
order concerning trial witness; (2) are irrelevant; and (3) are
inadmissible hearsay and lack the appropriate foundation. The
Court addresses each objection by type.

    1.   *Compliance with the Court's order on trial witnesses.*

This litigation has been ongoing for roughly three and a half years, and the parties have conducted extensive discovery, including depositions of dozens of witnesses and large-scale document review. During the discovery phase, the parties disputed whether the testimony of non-opt-in ASMs about their job duties was relevant to the issues in this case. Because plaintiffs claimed that Big Lots has maintained a corporate policy and practice of misclassifying the ASM *job position*, the Court ruled that the testimony of non-opt-ASMs about their job experiences is potentially relevant. (*See* R. Doc. 220.) In that order, the Court directed each party to designate a pool of 40 nonexpert witnesses for deposition and then designate no more than 20 witnesses each for trial from the respective pools. Big Lots then identified several non-opt-in ASMs as witnesses and proceeded to depose them. It also combed through its corporate and employee records to find various documents connected to the employment of both opt-in and non-opt-in ASMs in support of its defense that its ASMs have and fulfill job duties that make them properly classified as exempt executive employees under 29 U.S.C. § 213(a)(1) and the attendant regulations promulgated by the Department of Labor and published at 29 C.F.R. § 541.0, *et seq*.

In arguing that Big Lots' designation of employment records of opt-in plaintiffs and non-opt-in ASMs who were not deposed

violates the Court's order regarding trial witness depositions,
plaintiffs misconstrue the Court's February 20, 2008 order. In
that order, the Court narrowed the universe for depositions and
trial witnesses, but it did not restrict either party from
submitting employment records of other ASMs to address the
classification issue. Further, plaintiffs' expert relies the
results of his survey, which is based on responses of more than
500 opt-in plaintiffs, not all of whom obviously were deposed.
Big Lots' introduction of the employment records is no more an
attempt to sneak non-deposed witnesses through the back door than
is plaintiffs' reliance on the survey. Accordingly, the Court
finds no violation of its scheduling order.

 2.   *Relevance*

Plaintiffs argue that the employment records of non-opt-in
ASMs are irrelevant to the issues in this case because they are
not "similarly situated" to the opt-in plaintiffs. As the Court
discussed, *supra*, in the context of plaintiffs' second motion *in
limine* and as it earlier explained in its February 20, 2008 order
(R. Doc. 220), the nature of plaintiffs' claim that Big Lots
maintains a corporate policy and practice of misclassification
renders the job experiences of non-opt-in ASMs relevant.

 3.   *Hearsay and Lack of Foundation*

Finally, plaintiffs argue that the employment records of

24

both opt-in plaintiffs and non-opt-in ASMs that Big Lots has designated as trial exhibits, along with the declarations of opt-in plaintiffs, is inadmissible hearsay and lacks a sufficient foundation. Declarations and affidavits previously submitted by plaintiffs for use in this case are admissible. Such declarations are not hearsay as they constitute statements made by paties. *See* Fed. R. Ev. 801(d)(1), (2). Further, the Court finds no authentication problems with declarations that plaintiffs have given for use in this case. Accordingly, the Court OVERRULES plaintiffs' objections to these documents and specifically allows Big Lots to admit the declarations and sworn survey responses included in its exhibits 1300 and 1301.

The employment records of plaintiffs and non-opt-in ASMs present a different problem, but plaintiffs have not demonstrated that Big Lots is incapable of laying a proper foundation for such documents. Big Lots may be able to authenticate and lay a business records foundation for the employment records or authenticate them and demonstrate a nonhearsay use for the documents. Because Big Lots has not had an opportunity to lay the foundation for these exhibits, the Court OVERRULES plaintiffs' omnibus objection directed at these records at this time to allow Big Lots the opportunity to authenticate and lay the appropriate foundation for these records.

### 4.   *Miscellaneous Exhibits*

Plaintiffs also object to handful of miscellaneous exhibits on these general grounds. First, they object to two letters from a Big Lots Claims Examiner, Sandi Kelly, to Cindy Bogert, one of the opt-in plaintiffs. (*See* Big Lots Exs. 535, 536.) Apparently, Bogert filed a worker's compensation claim with Big Lots, and these letters discuss the procedures for Bogert to continue work on a modified basis. Big Lots has not demonstrated the relevance of these letters and has not addressed plaintiffs' objections. As the letters appear to be hearsay and their relevance is not apparent, they are excluded.

Second, plaintiffs object to the introduction of the resume of opt-in plaintiff Ken Beck. (Big Lots' Ex. Beck 1065.) The resume appears to be part of a job application that Beck submitted to Big Lots to become an ASM. Its relevance is likewise unclear as it states nothing about the Big Lots ASM position but rather was submitted as part of a job application for that position. Big Lots has not addressed plaintiffs' objection to the Beck resume either. Accordingly, the Court excludes the Beck resume.

**B.   Exhibits Related to the Survey Conducted by Dan Bremer**[4]

Bog Lots has included in its trial exhibits several documents related to the survey conducted by its FLSA compliance expert, Dan Bremer. These documents include copies of the questionnaires that Bremer, Lyndel Erwin, and Greg Holt used to interview ASMs and other Big Lots employees. The Court has already excluded Bremer's opinion in its entirety. (*See* R. Doc. 366.) Therefore, the documents that underpin his report are also excluded.

**C.   Tables Included Walker's Report and Articles on which Walker Relies**[5]

Plaintiffs object to the introduction of tables of calculations that Dr. Walker prepared as part of his analysis of the Rausser survey and attached to his report. Plaintiffs argue that such table are inadmissible hearsay. Dr. Walker's calculations, although not independently admissible, are admissible under Federal Rule of Evidence 702 to allow the Court to assess the weight of his expert opinion. The Court addressed this rule thoroughly in denying Big Lots' *Daubert* motion to exclude the opinion of plaintiffs' expert, Professor Rausser. Accordingly, plaintiffs' objections to Dr. Walker's table

---

[4] Plaintiffs object to Big Lots' Exs. 1408, 1410-20.

[5] Plaintiffs object to Big Lots' Exs. 1428-32, 1434-44.

27

summaries are OVERRULED.

Plaintiffs also object to the introduction of academic articles on which Dr. Walker relied in preparing his opinion on hearsay grounds. Such articles appear to qualify as learned treatises. Upon laying the proper foundation, the statements in these articles that Dr. Walker relied upon in preparing his opinion may be "read into evidence but may not be received as exhibits." Fed. R. Ev. 803(18). Accordingly plaintiffs' objections to the introduction of the entire articles is SUSTAINED, but Big Lots may use the treatises as provided in Rule 803(18).

**D. Documents for the Impeachment of Professor Rausser and William Cutler**[6]

Plaintiffs have objected to several documents related to the preparation and interpretation of the survey that Professor Rausser performed. They include emails between plaintiffs' counsel, Cutler, and Professor Rausser and his staff, along with drafts of the survey questionnaire, draft copies of Rausser's report and related documents, including copies of administrative regulations defining the contours of the executive employee exemption. Big Lots has explained in response that it has

---

[6] The documents in this category to which plaintiffs object are listed in Exhibit A-6 to plaintiffs' brief on their objections.

identified these documents for use in cross-examination of Professor Rausser and Cutler and for impeachment purposes. Such documents may be used for impeachment purposes. Accordingly, plaintiffs' objection is OVERRULED.

**E.    Wage Comparison Chart, Payroll Summaries, and Associate/Job History (Exs. 1302, 1303, 1304)**

Plaintiffs object to the introduction of a collection of charts (Ex. 1302) that compare the salaries earned by all of the ASMs whom the parties have identified as trial witnesses to the hourly wages earned by associate employees who worked in the same stores as those ASMs. Big Lots explains that this chart was attached to the affidavit of Brad Waite that it submitted in opposition to plaintiffs' motion for partial summary judgment on March 25, 2008. Plaintiffs also object to a series of documents titled "PeopleSoft Payroll Summaries" that summarize the pay that all of the ASMs called as trial witness received, along with the wages of hourly associates who worked at those witnesses' stores. (Ex. 1303.) Plaintiffs' third objection concerns Exhibit 1303 titled "Associate/Job History," which is a summary of salaries for Big Lots employees who are not assigned to particular store, for instance corporate officers and district managers. Plaintiffs' objections involve two issues: (1) whether Big Lots produced requested information during discovery and (2) whether

Big Lots has disclosed the original data that underlie the charts and summaries for inspection and proper authentication as Federal Rule of Evidence 1006 requires.

With respect to the wage comparison chart (Ex. 1302), Big Lots submitted this chart as part of its opposition to plaintiffs' motion for partial summary judgment. In an affidavit attached to its opposition brief, Big Lots Executive Vice President Brad Waite attests that the chart was prepared under his direction in preparation for this litigation. Although Big Lots may have produced the chart during discovery, there is no indication that it has disclosed the source material on which the wage comparison chart is based. Big Lots does not affirmatively state that it has disclosed the materials on which the wage comparison tables are based, nor does it identify that information. Therefore, Big Lots has not satisfied the disclosure requirement of Federal Rule of Evidence 1006, and the Court SUSTAINS plaintiffs' objection to Exhibit 1302.

The Court, however, reserves ruling on plaintiffs' objections to Exhibits 1303 and 1304, the PeopeleSoft payroll summaries.

F.   **Plaintiffs' Objections to Big Lots' Documents Detailing Employee Wage and Salary Ranges and Benefits (Big Lots Exs. 1402-05)**

Plaintiffs object to the introduction of a 2007 document detailing the salary range for assistant mangers and related documents that explain the Big Lots bonus plan and available employee benefits. Plaintiffs contend that Big Lots never produced these documents; Big Lots maintains that plaintiffs never requested production of these documents. Plaintiffs request for production specifically identify 2003 and 2006 quartile salary tables, but there is no indication that specifically requested the documents in these exhibits. Big Lots may have the opportunity to authenticate and lay the appropriate foundation for these exhibits. Accordingly, the Court OVERRULES plaintiffs' objection to Big Lots' exhibits 1402-05.

G.   **Plaintiffs' Miscellaneous Objections**

Plaintiffs have also raised a host of miscellaneous objections. They object to the depositions of Chad DeLaune and Sheila Gaston, two opt-in plaintiffs, on the grounds that Big Lots has sought to introduce the full transcripts in violation of the Court's standing pretrial order on the presentation of deposition testimony. (Big Lots' Exs. 769, 869.) The Court understands that the parties are in the process of preparing designated excerpts and OVERRULES plaintiffs' objection.

Plaintiffs also object to three tables and reports (Big Lots Exs. 1209-11) prepared by retail industry consulting firms cataloging average salary ranges for retail employees in the United States on hearsay and relevance grounds. Big Lots has not responded to plaintiffs' objections. Accordingly the Court SUSTAINS plaintiffs' objections.

Plaintiffs object to the introduction of the resumes and job applications of opt-in plaintiffs prepared in their post-Big Lots employment job searches (Big Lots Exs. 1218-22). The Court has already addressed these exhibits in its *in limine* ruling *supra*. Accordingly, the Court SUSTAINS plaintiffs' objections to these exhibits, and they will not be admitted.

## IV.  BIG LOTS' OBJECTIONS TO PLAINTIFFS' EXHIBITS

Big Lots has raised a few objections to plaintiffs' exhibits.

First, Big Lots objects to plaintiffs' exhibit 24, which is a document titled "2003 Bonus Program Furniture Sales Manager," and plaintiff's exhibit 121, which is a video recording titled "Furniture on the Move" that provides an overview of the job responsibilities and compensation structure for Big Lots

32

furniture sales managers.[7] Big Lots argues that these exhibits
are irrelevant because they do not define the job
responsibilities of ASMs. As plaintiffs point out, however, one
of the lines of inquiry on the misclassification issue is the
relationship between ASMs' compensation to that of hourly
employees who perform the same work. Therefore, information about
the pay of furniture department managers is relevant. The Court
DENIES Big Lots' objection to these exhibits.

Second, Big Lots objects to the introduction of declarations
and survey responses of the opt-in plaintiffs that plaintiffs
have designated as trial witnesses (Pls.' Exs. 68, 171-95) on
hearsay and authentication grounds. As the Court discussed at
length in its ruling on the parties' *Daubert* motions, the Court
may examine the surveys to assess how much weight ultimately
should be given to the expert opinions of Rausser and Cutler, who
based their opinions on the survey responses. *See* Fed. R. Ev.
702, 703. The surveys are not admitted for substantive purposes
but to assist the Court in evaluating the testimony of
plaintiffs' expert.

Third, Big Lots objects to stipulations on opt-in

---

[7] Big Lots also objects to plaintiffs' exhibit 69, which,
plaintiffs represent, was identical to exhibit 24. Plaintiffs
have withdrawn exhibit 69.

plaintiffs' workweeks and wage information (Pls.' Exs. 70, 71). Exhibits 70 and 71 are left blank in plaintiffs' trial exhibits, so Big Lots' objection appears to be moot. Plaintiffs further explain that these stipulations are actually embodied in the joint pretrial order as the only uncontested material facts. Any uncontested information in the pretrial order is considered a judicial admission and is binding on the parties. In the apparent absence of plaintiffs' exhibits 70 and 71, the Court RESERVES ruling on Big Lots' objections to these exhibits.

Fourth, Big Lots objects to the admission of the reports of plaintiffs' experts (Pls.' Exs. 74 and 75). It is the testimony of these experts that is evidence, not the reports themselves. The reports may not be introduced, although the Court will review the underlying research in evaluating the expert opinions. *See* Fed. R. Ev. 702, 703. Accordingly, the Court SUSTAINS Big Lots' objection to the admission of the reports themselves.

Fifth, Big Lots objects to the admission of copies of the Department of Labor's Wage and Hour Division Field Operations Handbook (Pls.' Ex. 114). Plaintiffs introduced these documents as part of their *Daubert* challenge to the reliability of the interview techniques of Dan Bremer, Big Lots' FLSA compliance expert. The Court has already excluded Dan Bremer. Accordingly, it fails to see why the Handbook is relevant at this stage. The

34

Court SUSTAINS Big Lots' objection.

Sixth, Big Lots objects to the admission of the documents that plaintiffs filed as manual attachments to their *Daubert* motion concerning Walker's opinion and their responsive briefing to Big Lots' *Daubert* motions on Rausser and Cutler. Those attachments included articles relied upon by Rausser, correspondence between counsel, Walker's deposition, and Rausser's declaration (Pls.' Exs. 329, 330). Rausser's declaration and counsel's correspondence are excluded as hearsay. Upon authentication and laying of a proper foundation, the pertinent statements of the academic articles upon which Rausser relied may be read into the record pursuant to Federal Rule of Evidence 803(18), just as Dr. Walker may read the statements from articles that he used into the record. Plaintiffs may use Walker's deposition testimony for impeachment purposes.

Seventh, Big Lots raises a general objection to plaintiffs' introduction of exhibits on CDs and DVDs that are attached to their exhibit lists. Big Lots contends that it has not received a copy of these CDs. The parties have submitted electronically stored copies of exhibits to ease the Court's burden of digesting their voluminous trial exhibits. Although the Court has found no discrepancies between the hard copies of the plaintiffs' exhibits and the electronically store copies, the Court RESERVES ruling

Big Lots' objection. Plaintiffs shall provide copies of the electronically stored information to Big Lots or take other steps to satisfy Big Lots that the electronically stored exhibits are the same as the hard copies.

## V.   PLAINTIFFS' OBJECTION TO THE MAGISTRATE JUDGE'S ORDER REGARDING ELECTRONIC DISCOVERY

Plaintiffs have also appealed and objected to Magistrate Judge Sally Shushan's order concerning plaintiffs' notice to take a second deposition of Big Lots' corporate representative(s) designated under Federal Rule of Civil Procedure 30(b)(6) to determine what steps Big Lots took since the inception of this litigation to preserve and located electronically stored information that might be responsive to plaintiffs' discovery requests (e-discovery). Magistrate Judge Shushan found that plaintiffs failed to inquire about such e-discovery issues when plaintiffs noticed Big Lots' Rule 30(b)(6) depositions and delayed in filing their motion to compel until just before the close of discovery and shortly before trial, even though they had ample opportunity to do so over the course of at least the last two years. She then granted in part and dismissed in part as moot Big Lots' motion for a protective order to prohibit plaintiffs from taking a second deposition and denied plaintiffs' motion to

compel. (*See* R. Doc. 335.)

Under Rule 72(a) of the Federal Rules of Civil Procedure, the district court, in considering objections to a pretrial discovery ruling by the magistrate judge, "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." "A finding of fact is clearly erroneous when, even though there may be evidence to support the finding, the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bolding v. Commissioner of Internal Revenue*, 117 F.3d 270, 273 (5th Cir. 1997). Upon reviewing the record and the magistrate judge's order, the Court does not find that the magistrate judge's factual findings are clearly erroneous or that she committed any errors of law. While Big Lots' responses to plaintiffs' discovery requests were hardly the paragon of responsiveness, plaintiffs failed to press Big Lots on the e-discovery issue at the appropriate times during discovery, namely when they first took Big Lots' corporate depositions under Rule 30(b)(6) in June 2006. Notably, it did not list e-discovery as one of the topics to be discussed at those depositions. Although plaintiffs later moved to compel responses on discovery requests for electronic documents, they withdrew those motions after back and forth wrangling and negotiations

37

between the parties. Plaintiffs then filed their motion to compel that was the subject of the magistrate judge's order on March 28, 2008 — only two days before the close of discovery and just over a month before trial. In light of the rapidly approaching trial date and the ample opportunity that plaintiffs had to compel production of responses to e-discovery requests, the magistrate judge correctly denied plaintiffs' motion to compel. E-discovery matters are no longer the novel issues that they once were with the advent of the Internet and wide expansion of computerized data collection. There is no legitimate excuse for plaintiffs' failure to question Big Lots' 30(b)(6) representatives about these issues at an earlier date or follow through on its earlier motions to compel. Plaintiffs' request to reopen discovery two days before the cutoff and a month before trial would only delay resolution of this matter. Further, the Court finds no reason that plaintiffs could not have filed their motion to compel at an earlier date that would not have conflicted with the close of discovery and final pretrial preparations. Accordingly, the Court AFFIRMS the decision of Magistrate Judge Shushan.


**VI.  PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Plaintiffs have also moved for partial summary judgment on the core issue of whether Big Lots can prove its affirmative

defense that it properly classified ASMs as exempt executive employees. The Court concludes that there are numerous issues of material fact that preclude it from granting summary judgment on the key question of liability in advance of trial. Here, it highlights two in particular.

### A.    Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at

325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**B.   Discussion**

The Court finds that there are genuine issues of material fact on at least two important regulatory factors that the Court must consider in determining whether Big Lots has properly classified the ASM job position. The first is the amount of time that opt-in plaintiffs spent as the sole manager on duty (MOD) and their responsibilities during those times. Big Lots' expert economist, Dr. Walker has pointed out that according to plaintiffs' own survey responses, the vast majority of ASMs spent approximately 50 percent of their normal working hours as the sole manager on duty and that during those times, they were responsible for supervising associate employees on shift. *See* Walker Report at 36. The Department of Labor's administrative regulations provide that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy" the requirement that their "primary duties" consist of

40

managerial tasks, including directing the work of employees. 29 C.F.R. § 541.700(b). *See also* 29 C.F.R. 541.102. Questions about the percentage of time that ASMs spent as the MOD and the nature of the responsibilities while serving as the MOD remain, but those same questions make summary judgment inappropriate.

Second, Big Lots has submitted a wage analysis prepared by Walker that shows that the average salaries of ASMs greatly exceed the wages paid to hourly employees and that when employee benefits are added to the equation, the compensation of ASMs is even greater. One of the considerations in determining whether an employee is properly classified as exempt is the relationship between the exempt "employee's salary and the wages paid to other employees for the kind of nonexempt work performed by other employees." 29 C.F.R. § 541.700. Big Lots has at least raised an issue of fact over whether the primary duty of ASMs are managerial in nature given the relative difference between the compensation of ASMs and associate, hourly employees, and ASMs' responsibilities as MODs. Accordingly, plaintiffs are not entitled to summary judgment as a matter of law.

## VII. CONCLUSION

For the foregoing reasons, the Court (1) GRANTS in part and DENIES in part Big Lots' motion *in limine* concerning Rausser and

41

Cutler; (2) GRANTS in part and DENIES in part plaintiffs' omnibus motion *in limine*; (3) SUSTAINS in part and OVERRULES in part plaintiffs' objections to Big Lots' trial exhibits; (4) SUSTAINS in part and OVERRULES in part Big Lots' objections to trial exhibits; (5) AFFIRMS the magistrate judge's ruling; and (6) DENIES plaintiffs' motion for partial summary judgment.

New Orleans, Louisiana, this <u>7th</u> day of May 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE