UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOHN JOHNSON, ET AL.                    CIVIL ACTION

VERSUS                                  NO: 04-3201 c/w
                                        05-6627

BIG LOTS STORES, INC.                   SECTION: "R" (1)



**ORDER AND REASONS**

Before the Court is defendant Big Lots Stores, Inc.'s motion
for costs under Federal Rule of Civil Procedure 54(d) in
connection with the Court's June 20, 2008 Order decertifying the
collective action in this matter and plaintiffs' motion for
attorneys' fees and costs in connection with the judgments on the
individual claims of John Johnson and Robert Burden.  For the
following reasons, the Court DENIES Big Lots' motion for costs at
this time and GRANTS plaintiffs' motion for attorneys' fees and
costs, as modified.

## I. Background

On November 23, 2004, plaintiffs, on behalf of themselves and all other similarly situated individuals, brought this overtime pay action against their employer, Big Lots Stores, Inc., under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* The plaintiffs were current or former Big Lots Assistant Store Managers (ASMs) who alleged they were misclassified as executive employees and thereby unlawfully denied overtime pay in violation of 29 U.S.C. § 207(a)(1) of the FLSA. Utilizing the two-stage certification approach employed by the majority of courts in determining whether to certify a case as a collective action under § 216(b) of the FLSA, the Court conditionally certified the matter as a collective action on July 5, 2005. (R. Doc. 36). *See Thiessen v. G.E. Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001)(explaining two-stage approach). The parties then sent notices to individuals employed by Big Lots as ASMs on or after November 23, 2001. In response, roughly 1,200 plaintiffs consented to join the litigation as opt-in plaintiffs. The nationwide class of plaintiffs was later reduced to 936 current and former Big Lots ASMs. A little over two years later on June 1, 2007, Big Lots moved to decertify the class. Based on the evidence before it at the time and in light of plaintiffs' claim that Big Lots maintained a *de facto* policy and practice of misclassifying the ASM job position, the Court denied Big Lots'

motion to decertify. (R. Doc. 113). The Court first conducted a bench trial in this matter on May 7, 2008. After considering all of the evidence, the Court determined that the matter was not fit for adjudication as a nationwide collective action and issued an order decertifying the class and dismissing the opt-in plaintiffs without prejudice on June 20, 2008. (R. Doc. 401). Forty-five plaintiffs remained in the case after decertification.

The Court conducted a bench trial from January 26-27, 2009 on the claims of three plaintiffs — John Johnson, Robert Burden, and James Alford. After trial, James Alford moved to dismiss his claim against Big Lots with prejudice pursuant to Federal Rule of Civil Procedure 41. The Court granted his motion to dismiss. The other two plaintiffs, John Johnson and Robert Burden, prevailed on the merits of their claims. (R. Doc. 500). The Court found that Burden and Johnson were misclassified as exempt executives and were thus owed overtime compensation. (R. Doc. 500). The Court awarded Burden $63,847.50 in overtime pay and liquidated damages and Johnson $63,587.60 in overtime pay and liquidated damages. (R. Doc. 500). The remaining forty-two plaintiffs moved to be dismissed from the case voluntarily, and the Court dismissed their claims with prejudice. (R. Docs. 495, 497, 504, 516). Johnson and Burden now seek attorneys' fees and costs in connection with their successful claims. Big Lots seeks

costs for the original proceeding, contending that it was the "prevailing party" in the decertification order.

## II.  Attorneys' fees for individual plaintiffs

Under the FLSA, a prevailing plaintiff is entitled to a reasonable attorney's fee. *See* 29 U.S.C. § 216(b) ("[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The Fifth Circuit uses the lodestar method to calculate an appropriate attorney's fee award under the FLSA. *See Saizan v. Delta Concrete Products Co, Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). The "lodestar" is essentially the reasonable number of hours expended on litigation multiplied by a reasonable hourly rate. *See Strong v. Bellsouth Telecommunications, Inc.*, 137 F.3d 844, 851 (5th Cir. 1998).

After calculating the lodestar, the Court may decrease or enhance the amount based on the relative weight of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Saizan*, 448 F.3d at 800. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5)

4

the customary fee; (6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained; (9) the
experience, reputation, and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and length of
professional relationship with the client; and (12) awards in
similar cases. *Von Clark v. Butler*, 916 F.2d 255, 258 n.3 (5th
Cir. 1990).

Here, Johnson and Burden prevailed on their individual
claims. However, plaintiffs were unsuccessful in maintaining
their case as a collective action. The Court may use its
"equitable discretion" to arrive at a reasonable fee award by
eliminating certain hours related to unsuccessful claims or by
reducing the fee award to account for plaintiffs' limited
success. *Pruett v. Harris County Bail Bond Bd.*, 499 F.3d 403, 418
(5th Cir. 2007). When a plaintiff achieves limited success, "the
product of hours reasonably expended on the litigation as a whole
times a reasonable hourly rate may be an excessive amount." *Migis
v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998). But
"an attorney's failure to obtain every dollar sought on behalf of
his client does not automatically mean that the modified lodestar
amount should be reduced." *Saizan*, 448 F.3d at 799.

The failure of plaintiffs to certify their case as a collective action does not alter plaintiffs' status as prevailing parties, nor does it suggest that Johnson's and Burden's individual claims were of limited success. The decertification of a class is collateral to the merits, and therefore does not diminish the relative success of plaintiffs' underlying claims. *See J.R. Clearwater, Inc. V. Ashland Chemical Co.,* 93 F.3d 176 (5th Cir. 1996). The "equitable discretion" of this Court to adjust the lodestar calculation is not limited to the success of plaintiffs' claims alone. In evaluating the ultimate "results obtained" by plaintiffs, this Court may also consider the success of motions decided during the course of the litigation and other factors, such as the social benefit of exposing defendants' activities. *See Louisiana Power & Light*, 50 F.3d at 329 (evaluating the results obtained by plaintiffs based on factors tangentially related to plaintiffs' claims, such as social benefit of exposing racketeering activity). While Johnson and Burden prevailed on their individual claims, the overall "results obtained" by plaintiffs were of limited success in relation to their initial aim to certify a FLSA collective action. Further, plaintiffs were also unsuccessful on other aspects of the collective action, such as in seeking summary judgment and in motions to compel discovery. Accordingly, the Court will discount plaintiffs' hours to adjust for the "results obtained."

**A.    Lodestar**

Plaintiffs' counsel requests a reimbursement of $336,052.50 in attorney time and $40,051.50 in paralegal time.  Each attorney submitted descriptions of the hours he incurred in the representation of Johnson and Burden.  The submissions contained a description of the tasks performed and the amount of time spent to accomplish the task.  In total, Johnson and Burden submit that 1,137.80 attorney hours were spent on their cases.  Specifically, plaintiffs initially submitted the following hours: 377.40 for Philip Bohrer, 90.7 for Hartley Hampton, 335.7 for Michael Josephson, 70.5 for Jim Rather, and 263.50 for Michael Tusa. Plaintiffs also seek reimbursement for 534.02 paralegal hours. Big Lots contends that plaintiffs' fee application is unreasonable since plaintiffs' billing entries are vague and contain redundancies that warrant a reduction in the fees and expenses or that the fees sought were for work that did not contribute to the results in the Johnson and Burden cases.


**1.    Hourly rate**

In determining the reasonable hourly rate, courts look to the reasonable hourly rate for attorneys of a similar caliber practicing in the community. *See Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *In re Enron*, 586 F. Supp. 2d at 756.  When an

7

attorney's requested rate is his customary billing rate and within the range of prevailing market rates, the court should consider the rate *prima facie* reasonable if not contested. *Louisiana Power & Light*, 50 F.3d at 328.

Plaintiffs have requested billing rates of $300 per hour for the partner-level attorneys Bohrer, Hampton, Josephson, and Tusa. Plaintiffs have requested a billing rate of $225 per hour for Rather, an associate. Plaintiffs have requested $75 per hour for paralegals. Big Lots has not contested the reasonableness of these rates.

The Court finds the rates to be reasonable. The Court is familiar with the local legal market and finds that the $300 per hour rates are within the customary range for partner-level attorneys practicing employment law in the area.[1] Similarly, the $225 per hour associate rate and $75 per hour paralegal rates are within the customary range of rates charged. The Court has recently approved attorneys' fees above these requested rates in a securities class action. *See In re OCA, Inc.*, *Sec. and Derivative Litig.*, 2009 WL 512081, at *25 (E.D. La. 2009) (finding that partner-level attorneys performing securities work customarily billed at a rate between $400 and $450 an hour and

---

[1]The Fifth Circuit has noted that a court is itself an expert in attorneys' fees and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value." *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).

associates customarily billed at a rate between $200 and $250 an hour). That Big Lots has not opposed the rates is further evidence of their reasonableness.

## 2. Hours reasonably expended

The party seeking attorneys' fees bears the burden of documenting the appropriate hours expended. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The party must prove that he or she exercised billing judgment. *Saizan*, 448 F.3d 799. This "requires documentation of the hours charged and those written off as unproductive, excessive, or redundant." *Id.* The court should eliminate all hours that are excessive or duplicative. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court may also reduce hours that are too vague to permit meaningful review. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995). The hours that are not eliminated should be those "reasonably expended on the litigation." *Watkins,* 7 F.3d at 457. If the party seeking fees does not show billing judgment, the court may reduce the award by a percentage to substitute for the exercise of billing judgment. *Id.*

The Court must consider the hours expended in light of the results obtained in this litigation — a favorable result for two individual plaintiffs, but an unsuccessful effort to maintain a class action. Plaintiffs' attorneys have themselves discounted

9

their hours in light of the results obtained in the litigation. Plaintiffs' attorneys have submitted affidavits stating that they eliminated hours that were not relevant to the determination of the exempt status of Johnson or Burden or the issue of liquidated damages. (R. Doc. 517, Exhibits 1-5). They assert that they included hours incurred, whether in discovery or in preparation for the two trials, only to the extent they were necessary for the individual claims of Johnson and Burden. Each attorney further stated that he endeavored to eliminate all repetitive, redundant, or excessive billing. (R. Doc. 517, Exhibits 1-5).

    *i.   Tusa and Rather*

Tusa and Rather were actively involved as counsel for plaintiffs during the collective action phase of this case. They withdrew as counsel of record on October 22, 2008, well before the trials of the individual plaintiffs' claims. (R. Doc. 431). Big Lots contends that Tusa and Rather had no involvement in prosecuting the individual claims of Johnson and Burden and thus should be denied fees in their entirety. Big Lots specifically attacks the time entries of Tusa and Rather that refer to work on the collective action, plaintiffs' unsuccessful motion for summary judgment, work on unsuccessful motions to compel discovery, work on the opposition to the motion to decertify the class, and work with William Cutler, an expert witness in the collective action trial whose testimony was not relied upon in

the individual cases.  Tusa and Rather have since deleted hours relating to the unsuccessful summary judgment motion. (R. Doc. 525-1).

That Tusa and Rather performed work only in connection with the collective action trial is not dispositive.  The Fifth Circuit has held that when a plaintiff ultimately prevails after two trials, the plaintiff may receive fees from both trials. *Abner*, 541 F.3d at 382-83.  In *Abner*, a Title VII case involving a hostile work environment claim, the Fifth Circuit considered hours expended in preparation for two trials, the first of which ended in a mistrial, in awarding attorneys' fees. *Id.*  The court specifically noted that "work done during the first trial . . . contributed to this result." *Id.* at 382.  The court then explained that both trials centered around hostile work environment discrimination and that the first trial drew out important evidentiary issues that were disputed in the second trial.  *Id.* at 382-83.  The court approved the district court's fee award and explained that the district court followed the Supreme Court's instruction in *Hensley*: "it cut out the fees charged for work on unsuccessful claims and for any other work that it deemed unreasonable." *Id.* at 383.

Here, some of the work of Tusa and Rather in connection with the first trial was essential to the litigation of Johnson's and Burden's individual claims.  For instance, work on discovery

involving Big Lots' general store operations and research involving the executive exemption, while initially performed when the case was a collective action, were undoubtedly essential to the prosecution of the plaintiffs' individual claims.  If the case had never been brought as a collective action, the individual plaintiffs would have still required discovery on Big Lots' dock-to-stock process, store procedures and the corporate reasons for classifying ASMs as exempt executives.  Further, Burden and Johnson were deposed in connection with the collective action, and they responded to discovery.  Counsel's work in these areas is relevant to plaintiffs' individual claims and is compensable.  The Court thus finds that plaintiffs are entitled to recover the attorneys' fees of Tusa and Rather that contributed to plaintiffs' victory on their individual claims to the extent that those fees are reasonable.

As noted, *supra*, plaintiffs' attorneys have stated that they eliminated the hours that were unrelated to the individual plaintiffs' claims.  Still, Tusa and Rather have failed to carry their burden of proving that they exercised billing judgment. Some of Tusa's time entries do not facially appear related to the individual plaintiffs' claims.  Entries, such as "confer with co-counsel," and "preparation for deposition" cannot be readily related to the claims of the individual plaintiffs.  Moreover, Tusa initially included many time entries for an unsuccessful

motion for summary judgment in the collective action and still seeks compensation for unsuccessful motions to compel discovery. He also seeks fees for expert discovery that did not contribute to the results in the individual cases. Indeed, the Court found that experts were unnecessary in the individual actions. Apart from the 23 hours that Tusa eliminated for work on the failed summary judgment motion, Tusa's records also do not contain any indication of the hours he wrote off as redundant, unproductive, or unrelated to the plaintiffs' individual claims. Although Tusa did excellent work, the Court must discount his adjusted hours by 16.8%, resulting in a lodestar of $60,000.00.

Rather's proposed hours suffer from the same problems. He includes substantial time devoted to expert testimony and some work on other plaintiffs' cases. He originally included hours spent on plaintiffs' unsuccessful summary judgment motion. Further, Rather's records do not indicate the number or nature of the hours he wrote off as excessive or unrelated to the plaintiffs' individual claims, except for the belated deletion of 15.4 hours spent on plaintiffs' summary judgment motion. Accordingly, the Court will discount Rather's adjusted hours by 48.8%, for a lodestar of $6,345.00.

*ii.  Hartley Hampton*

After objecting to attorneys who were exclusively involved in the collective action phase of this case, Big Lots next

13

objects to the fees of Hartley Hampton since he was exclusively involved in the individual plaintiffs' phase of the case. Hampton's billing records reflect that he was uninvolved in the Big Lots litigation until October 2008, when he began to prepare the plaintiffs' cases for trial. Big Lots avers that Hampton's involvement is "puzzling" and contends that plaintiffs' other counsel, Michael Josephson, could have handled all the live witnesses at trial.

The Court finds that Hampton's general involvement in the case was reasonable. When Tusa and Rather withdrew from the case, plaintiffs were left with two attorneys, Bohrer and Josephson. The individual claims of three plaintiffs were scheduled to go to trial in January. Plaintiffs' decision to bring in a third attorney was not unreasonable. Indeed, Big Lots itself had four attorneys at trial. The involvement of Hampton, an attorney with 31 years of experience, did not constitute overstaffing, and his attorney's fees should not be reduced for this reason.

The Court further finds that Hampton's time entries are not vague and show the exercise of billing judgment. Further, Hampton does not appear to have included hours related to the unsuccessful claim of the individual plaintiff, James Alford. The Court will not alter his requested hours, and thus the lodestar for his work is $27,210.00.

*iii. Michael Josephson*

Big Lots contends that Josephson's proposed fees should be discounted because the entries are vague and do not show that the work performed was connected to Johnson's and Burden's claims. Big Lots asserts that Josephson included time spent on plaintiffs' unsuccessful motion for summary judgment in the collective action phase of the case. Big Lots also notes that Josephson's time entries connected to the January 2009 trials do not specify to which plaintiffs' claim the work relates.

Many of Josephson's time entries during the collective action phase of the case are not connected to the claims of the individual plaintiffs. He includes time spent on conditional certification, trial, unsuccessful motions to compel and for summary judgment, and work on expert discovery that did not redound to the benefit of Johnson and Burden. Other entries are too vague for the Court to discern to what they relate. For these reasons, the Court finds it necessary to discount his hours by 20%, resulting in a lodestar of $80,568.00.

*iv.  Philip Bohrer*

Big Lots objects to some of Bohrer's time entries as vague and indistinguishable from work related to the collective action phase of the case. Big Lots, however, objects to significantly fewer of Bohrer's time entries than those of his co-counsel. Big Lots also objects to Bohrer's legal fees in connection with the

depositions of Big Lots' corporate officials since Bohrer, Josephson, and Tusa attended the depositions and requested attorney's fees for this endeavor.

The Court finds that some of Bohrer's entries are vague and do not appear related to plaintiffs' claims.  But these entries are generally for very small time increments.  In addition, there are a few entries that relate to experts in the collective action and unsuccessful motions to compel in that proceeding.  On the other hand, the Court does not find that Bohrer's fees in connection with Big Lots' corporate depositions must be reduced. Accordingly, the Court finds it necessary to discount Bohrer's requested fee to account for unrelated work and vague time entries by 10%, resulting in a lodestar of $101,898.00.

   *v.   Paralegals*

Plaintiffs may recover attorneys' fees for paralegal work to the extent the work is legal rather than clerical. *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001) (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)).  Big Lots asserts that the vast majority of paralegal time requested is administrative in nature and thus should be reduced to no more than $4,000.00.

The Court finds great difficulty determining what much of the paralegal time concerned.  Entries coded as "File Maintenance Document Repository-Order re: motion to compel," suggest filing

documents, an administrative task.  Other entries refer to
preparation for the class trial, multiple deposition summaries of
unidentified witnesses, and assistance at the class trial that
cannot be readily related to Johnson's and Burden's claims.  Fees
for these tasks may not be recovered.  The Court will thus
discount the requested paralegal hours by 60%, for a lodestar of
$16,020.60.

    *vi.  Lodestar summary*

    In sum, the Court finds that multiplying a reasonable hourly
rate by the reasonable hours expended on the claims of Johnson
and Burden results in a lodestar of $276,021.00 for attorneys'
fees and $16,020.60 for paralegal fees, resulting in a total
lodestar of $292,041.60.

    **B.  *Johnson* factors**

    There is a strong presumption that the lodestar is
reasonable, and it should be modified only in exceptional cases.
*See Saizan*, 448 F.3d at 800; *Watkins*, 7 F.3d at 457.  After
calculating the lodestar, the court may decrease or enhance the
amount based on the factors set forth in *Johnson*.  The *Johnson*
factors are intended to ensure "a reasonable fee." *Johnson*, 488
F.2d at 720.  The court should particularly consider the *Johnson*
factors involving "the time and labor involved, the customary
fee, the amount involved and the result obtained, and the
experience, reputation and ability of counsel." *Saizan*, 448 F.3d

at 800. The court should not adjust the lodestar based on a *Johnson* factor that was already taken into account in the creation of the lodestar. *Id.*

In calculating the lodestar, the Court already considered the attorneys' customary fee, the time and labor required, the amount involved and the results obtained. The Fifth Circuit has also noted that the novelty and difficulty of the issues and the skill required to perform the legal services properly are incorporated into the calculation of the lodestar. *Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5th Cir. 1993). So, too, is the preclusion of other employment by the attorney. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Lastly, the Supreme Court has barred the use of the *Johnson* factor pertaining to whether the fee was fixed or contingent. *City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992).

Thus the only *Johnson* factors that could support an upward of downward departure from the lodestar here are the experience and reputation of the attorneys, whether the client or case imposed time constraints, whether the case was undesirable, the nature and length of the professional relationship with the client, and awards in similar cases. No party has urged the Court to depart from the lodestar based on any of these factors. And while the Court notes that the attorneys were of the highest quality and that overtime actions based on misclassification may

qualify as "undesirable" in that they are difficult to win, the Court does not find that these factors are so "exceptional" to warrant an upward departure from the lodestar.

The Court has already considered the "results obtained" factor in the calculation of the lodestar and has eliminated all hours that were either not related to the successful claims of Johnson and Burden or that were unreasonable. In this regard, the Court also considers that the lodestar fees exceed the damages awarded. That the attorneys' fees exceed the awards to the plaintiffs does not make them *per se* unreasonable. The Supreme Court has rejected any "proportionality" rule between the damages awarded to a successful plaintiff and the amount of attorneys' fees awarded. *See City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). The Fifth Circuit has similarly recognized that there is no *per se* proportionality rule, *Saizan*, 448 F.3d at 802, and has made clear that "while a low damages award is one factor which a district court may consider in setting the amount of attorney's fees, this factor alone should not lead the district court to reduce a fee award." *Singer v. City of Waco*, 324 F.3d 813, 830 (5th Cir. 2003) (quoting *Hollowell v. Orleans Reg'l Hosp. LLC,* 217 F.3d 379, 392 (5th Cir. 2000)). Indeed, the Fifth Circuit has approved several attorneys' fee awards in excess of plaintiffs' recovery. *See Singer v. City of Waco,* 324 F.3d 813 (5th Cir. 2003) (approving an award of $250,750.00 in

19

attorneys' fees after plaintiffs' recovered $180,000 for their
FLSA claim); *Amarillo v. Dobson Cellular*, 58 F.3d 635 (5th Cir.
1995) (district court did not abuse its discretion in awarding
$408,323.29 when plaintiff recovered $331,243.71); *Cox v.
Brookshire Grocery Co.*, 919 F.2d 354 (5th Cir. 1990) (approving
an award of $9,250 in attorneys' fees when plaintiff recovered
$1,181 under the FLSA); *Lucio-Cantu v. Vela*, 239 Fed. Appx. 866
(5th Cir. 2007) (district court did not abuse its discretion in
awarding $51,750 in attorneys' fees under FLSA when plaintiffs
recovered $3,349.29, $52.50, and $1,296.00 respectively).

Here, plaintiffs were unsuccessful in maintaining their case
as a collective action. Plaintiffs' individual claims, in
contrast, were successful. Johnson and Burden succeeded in
proving that they were misclassified, succeeded in their efforts
to attain liquidated damages, and succeeded on other points that
elevated their damages award, such as whether their bonuses were
included in their regular rates of pay and the appropriate number
of hours their salaries were intended to compensate. (R. Doc.
500). Thus the "results obtained" on plaintiffs' individual
claims were very favorable.

The plaintiffs' attorneys eliminated attorneys' fees that
they acknowledged were not in furtherance of the claims on which
they succeeded. The Court further discounted the requested hours
to account for the time entries that did not appear to be related

to Johnson's and Burden's successful claims, as well as all other time entries that did not show billing judgment.  Although the resulting lodestar of  $292,041.60 is higher than plaintiffs' damages award, the Court finds that no *Johnson* factor requires a downward departure from this amount.  Accordingly, the Court finds that plaintiffs are entitled to $292,041.60 in attorneys' fees.

**III. Costs**

Plaintiffs moves for costs in connection with Johnson's and Burden's individual claims.  Big Lots contends it is entitled to costs in connection with the first bench trial and subsequent decertification order because it was effectively the "prevailing party" with regard to the class certification issue.  Plaintiffs argue that the decertification order was procedural and does not entitle Big Lots to prevailing party status.

**A.    Prevailing party and costs related to decertification**

The Court will first consider the extent to which the parties are entitled to costs as prevailing parties.  Rule 54(d)(1) provides that the Court may award costs other than attorneys' fees to the prevailing party.  A plaintiff is a "prevailing party" if the party "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Abner v. Kansas City Southern*

21

*Ry. Co.*, 541 F.3d 372, 382 (5th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Or put another way, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). An enforceable judgment on the merits that benefits the plaintiff is generally sufficient to convey prevailing party status on the plaintiff. *See Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (citing *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 604 (2001)). Having won on the merits, Johnson and Burden are entitled to prevailing party status on their individual claims.

The dismissal with prejudice of claims against a defendant makes the defendant a prevailing party. *See Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 539 (5th Cir. 1990) (requiring defendants to pay costs even though defendants were not liable for Rule 11 sanctions and were the prevailing party in the underlying case given "defendants' repeated and abusive hardball tactics."); *Schwarz v. Folloder*, 767 F.2d 125 (5th Cir. 1985) ("Because a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case . . . is clearly the prevailing party and should ordinarily be entitled to costs.");

*Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) ("The Defendants, having obtained from [plaintiff] a voluntary dismissal with prejudice, are considered prevailing parties."); *Claiborne v. Wilson*, 414 F.3d 715, 719 (7th Cir. 2005) (dismissal with prejudice makes defendants prevailing party "because it terminates any claims [plaintiff] may have had against them arising out of this set of operative facts.").

After decertification, 43 individual plaintiffs moved to dismiss their individual cases against Big Lots with prejudice pursuant to Federal Rule of Civil Procedure 41(a). As to these claims, Big Lots was the prevailing party. *See Sheets,* 891 F.2d at 539.

A district court may exercise its discretion to grant or deny costs pursuant to Rule 54(d). *See Energy Management Corp. v. City of Shreveport*, 467 F.3d 471, 483 (5th Cir. 2006). There is a strong presumption under Rule 54(d) that a prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006). The Fifth Circuit counsels that when a trial court denies costs, it should state its reasons. *Id.*

As both parties have prevailed in some sense in this case, the Court finds it necessary to tax the costs equitably. Any costs related to the individual claims upon which John Johnson and Robert Burden prevailed shall be taxed to Big Lots. Likewise, any costs directly related to the claims of the 43

individuals who moved to dismiss their claims with prejudice will be taxed to those individual plaintiffs.

Many costs in this case, however, are related to the collective action phase of this case. Big Lots contends that the Court's procedural ruling in its favor makes it a "prevailing party" with respect to the collective action claim.

Big Lots has not cited any cases holding that a defendant becomes a prevailing party upon the decertification of plaintiffs' claims. The denial or decertification of a class is "a procedural ruling, collateral to the merits of the litigation." *J.R. Clearwater, Inc. v. Ashland Chemical Co.*, 93 F.3d 176 (5th Cir. 1996) (quoting *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 336 (1980)). This is what distinguishes this case from the cases cited by defendant. For instance, in *Reyes v. Texas EZPawn,* 2007 WL 4530533, at *2 (S.D. Tex. 2007), the court found that the defendant was entitled to costs, including costs incurred in defending against class certification, after defendant prevailed on the merits at trial. Unlike this case, *Reyes* did not have mixed results or a partially prevailing party. Defendant prevailed on all issues, both procedural and those related to the merits. Further, the *Reyes* court emphasized that the defendant "was clearly the prevailing party at trial." *Id.* The trial, not the decertification victory, made the defendant the prevailing party. As such, this case does not show that a

24

decertification victory makes a defendant a prevailing party.

Big Lots also cites *Gomez v. Reinke*, 2008 WL 3200794 (D. Idaho 2008), for its contention that it should receive costs in connection with the decertification order. In that case, six individual plaintiffs prevailed on the merits of their claims for which they were awarded costs, and the defendants prevailed on the merits of the class action claims for which they were awarded costs. Defendants' victory was not the decertification of a class, but a judgment on the merits. They were awarded costs for that victory. Thus, that decision does not support the proposition that a procedural decertification ruling renders a defendant a prevailing party entitled to costs.

In sum, the defendant has cited no authority, and the Court has found none on its own, to suggest that Big Lots should receive costs under Rule 54(d) for its purely procedural victory. Accordingly, the Court finds that Big Lots was not the prevailing party in the original proceeding, and its costs therefor should not be assessed to the plaintiffs.

**B. Plaintiffs' costs**

Big Lots also contests a number of plaintiffs' asserted costs. Specifically, Big Lots objects to plaintiffs' photocopying costs, travel expenses for depositions of corporate representatives, costs related to expert witness William Cutler, FedEx expenses, and the cost for a private investigator.

Section 1920 provides that a prevailing party may recover the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.A. § 1920. A court may award only those costs specified in section 1920, unless there is explicit statutory or contractual authority to the contrary. *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 529 (5th Cir. 2001). Courts have held that costs awarded under the FLSA include all reasonable out-of-pocket expenditures. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 969 (10th Cir. 2002) ("Under the FLSA, costs include reasonable out-of-pocket expenses"); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (when a statute expressly authorizes attorneys' fees, as in the FLSA, the court is not limited to the costs available under Rule 54(d)). While the Fifth Circuit has not specifically ruled on whether the FLSA allows attorneys to recover reasonable out-

of-pocket expenses as costs, it has followed other circuits in allowing out-of-pocket costs for claims under fee-shifting statutes such as Title VII and the ADEA. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395-96 (5th Cir. 2003) (allowing out-of-pocket travel expenses in a claim under the ADEA); *Mota*, 261 F.3d at 529 (noting that in Title VII cases, the Court allows "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as postage, photocopying, paralegal services, long distance telephone calls, and travel costs.").

A party seeking costs bears the burden of supporting its request with evidence documenting the costs incurred and proof, when applicable, that a certain item was "necessarily obtained for use in the case." *Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991).

The Court finds that plaintiffs' requested costs of $142,435.57 for what culminated in a two-day trial are excessive. Plaintiffs have requested some costs, such as expert fees, that are clearly not recoverable unless expressly authorized by statute. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995) (citing *West Virginia University Hosp., Inc. v. Casey*, 499 U.S. 83 (1991)). The FLSA does not authorize such fees. *See* 29 U.S.C. § 216(b); *Tyler v.*

*Union Oil Co. of California*, 304 F.3d 379, 405 (5th Cir. 2002)
("[t]here is no express statutory authority in the ADEA or the
FLSA to award expert witness fees for other than court-appointed
expert witnesses").  Further, the Court expressly ruled that
there would be no experts in the individual cases, and it has
found that the experts did not contribute to the Johnson-Burden
victory.  Plaintiffs have also not shown how other costs, such as
over $30,000 in expenditures for photocopying, were "necessarily
obtained" for use in Johnson's and Burden's cases.  Further, it
is not apparent how many of plaintiffs' costs, particularly those
incurred before the collective action phase of the case ended,
are directly related to the claims on which plaintiffs prevailed.
The Court thus finds it necessary to discount plaintiffs' cost
request substantially.  The Court finds that plaintiffs' request
must be discounted by 55%, resulting in a cost award of
$64,096.01.

**C.   Defendant's costs**

Big Lots has not submitted a bill of costs in connection
with the claims of the 43 plaintiffs who moved to be dismissed
with prejudice.  Accordingly, the Court will not consider
defendant's costs as this time.

## IV.  Conclusion

For the foregoing reasons, the Court DENIES Big Lots' motion for costs in connection with the decertification of the collective action.  The Court GRANTS plaintiffs' motion for attorneys' fees and costs and awards plaintiffs $292,041.60 in attorneys' fees and $64,096.01 in costs.

New Orleans, Louisiana, this 25th day of June, 2009.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE